# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs April 12, 2011

## STATE OF TENNESSEE v. LEON BOOKER

**Appeal from the Circuit Court for Dyer County**
**No. 09-CR-413     Lee Moore, Judge**

---

**No. W2010-02295-CCA-R3-CD  - Filed June 1, 2011**

---

A Dyer County Circuit Court jury convicted the defendant, Leon Booker, of two counts of driving while his driver's license was revoked, second or subsequent offense. *See* T.C.A. § 55-50-504. The trial court imposed concurrent sentences of 11 months and 29 days, to be served as six months' incarceration followed by placement in a community corrections program. In this appeal, the defendant challenges the sufficiency of the convicting evidence. Finding no evidentiary insufficiency, we affirm.

**Tenn. R. App. P. 3; Judgments of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and ROBERT W. WEDEMEYER, J., joined.

Timothy Boxx, Assistant District Public Defender, for the appellant, Leon Booker.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; C. Phillip Bivens, District Attorney General; and Charles Dyer, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The convictions in this case relate to the defendant's driving on June 9 and September 16, 2009, while his driver's license was revoked. At trial, Dyersburg Police Department Officer Chris Clemmons testified that he was patrolling in the Bruce Community of Dyersburg on a bicycle when he saw a teal GMC Suburban traveling at a high rate of speed. Officer Clemmons estimated that the vehicle was traveling at least 45 miles per hour in the 20-miles-per-hour zone. Officer Clemmons called in his observations, describing the vehicle and reporting the speed violation. He stated that other officers stopped the vehicle

on a nearby street and waited for Officer Clemmons to identify the vehicle. According to Officer Clemmons, the defendant, who was driving the vehicle, stated that his driver's license had been revoked. Officer Clemmons testified that he confirmed with his dispatcher that the defendant's driver's license had, indeed, been revoked. A certified copy of the defendant's driving record from the Department of Safety established that the defendant's driver's license was on a revoked status on June 9, 2009.

On September 16, 2009, Officer Clemmons was again patrolling the Bruce Community, this time in an unmarked police vehicle, when he observed the same teal GMC Suburban traveling in the same general vicinity. Officer Clemmons said that he and another officer "observed that the window tint was darker than 35 percent" and stopped the vehicle a short distance later. The defendant was the driver of the vehicle, and he told Officer Clemmons that his driver's license remained revoked at that time. Officer Clemmons again confirmed with his dispatcher that the defendant's driver's license was revoked.

Dyersburg Police Officer Shawn Crouch testified that he was patrolling near the Bruce Community on June 9, 2009, when he heard Officer Clemmons' call to stop the GMC Suburban. Officer Crouch stopped a vehicle matching Officer Clemmons' description and waited for Officer Clemmons to arrive and identify the vehicle. Officer Crouch testified that the defendant was driving the Suburban.

Dyersburg Police Officer Mason McDowell testified that he was patrolling the Bruce Community with Officer Clemmons on September 16, 2009, when they stopped a "light blue or teal colored" Suburban for having excess window tint. Officer McDowell said that the defendant was driving the Suburban and that the defendant admitted that his driver's license was revoked.

The defendant admitted that he was driving on both June 9 and September 16, 2009, but he insisted that his driver's license was not revoked. He explained that his license had been revoked at one time but that he had gotten a new license in 2006 that expired in April 2009. The defendant also conceded that he told Officer Clemmons on June 9, 2009 that his driver's license was revoked. He acknowledged that the license remained revoked on September 16, 2009.

At the conclusion of the proof, the jury convicted the defendant of two counts of driving while his driver's license was revoked. During a bifurcated proceeding, the jury determined that the defendant had twice been convicted of driving on a revoked license prior to June 9, 2009. Following brief argument by the parties, the trial court sentenced the defendant to concurrent terms of 11 months and 29 days with six months to be served in confinement "followed by a period of time on Westate Corrections Network," a community

corrections provider.

The defendant filed a timely but unsuccessful motion for new trial followed by a timely notice of appeal. In this appeal, the defendant contends that the evidence adduced at trial was insufficient to support his convictions. We review the defendant's claim mindful that our standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *Winters*, 137 S.W.3d at 654.

When examining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Winters*, 137 S.W.3d at 655. Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

"A person who drives a motor vehicle within the entire width between the boundary lines of every way publicly maintained that is open to the use of the public . . . at a time when the person's privilege to do so is . . . revoked commits a Class B misdemeanor." T.C.A. § 55-50-504(a)(1) (2004). "A second or subsequent violation of subdivision (a)(1) is a Class A misdemeanor." *Id.* § 55-50-504(a)(2).

Here, Officer Clemmons testified that the defendant was driving a teal GMC Suburban on June 9 and September 16, 2009, and that the defendant admitted that his driver's license was revoked. The defendant admitted driving on both June 9 and September 16, 2009, and that his driver's license was revoked at that time. Although the defendant made some vague complaints regarding the validity of the revocation, he did not actually deny that his license was revoked. Further, the defendant's official driving record established that the defendant's driver's license was on a revoked status at the time of the June 9 and September 16 traffic stops and that he had been convicted of driving while his license was revoked on September 18, 1987, and again on November 20, 2007. Although the defendant's 1987 conviction of driving on a revoked license could not be considered for enhancement purposes, *see id.* § 55-50-504(a)(2) ("Convictions occurring more than ten (10) years prior to the immediate violation shall not be considered for enhancement purposes under this subdivision . . . ."), the 2007 conviction was sufficient to support the jury's finding that the

defendant drove while his license was revoked after having been previously convicted of driving while his license was revoked.

Accordingly, the judgments of the trial court are affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE